CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JAN 30 2007

JOHN F. CORCORAN, CLERK.
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| JOHN C. GRIMES, | ) | CASE NO. 3:06CV00032 |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | By: B. Waugh Crigler U. S. Magistrate Judge |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's December 12, 2000 protectively filed application for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an order enter REVERSING the Commissioner's final decision, GRANTING the plaintiff's motion for summary judgment, entering judgment for the plaintiff and RECOMMITTING the case to the Commissioner solely to calculate and pay proper benefits.

In a decision dated June 28, 2002, a Law Judge found that although plaintiff's seizure disorder was a severe impairment, the frequency and severity of his seizures did not meet or equal any listed impairment and that he was not precluded from performing his past relevant

work. (R. 15-21.) Thus, the Law Judge concluded that plaintiff was not disabled under the Act. (R. 20-21.)

Plaintiff appealed the Law Judge's decision to the Appeals Council. (R. 8-9.) The Appeals Council denied the request for review, and plaintiff appealed the decision to the United States District Court for the Eastern District of Virginia. *See Grimes v. Barnhart*, 1:03-cv-00447-WCS (E.D. Va. 2003); (R. 421.) The District Court concluded that the record supported the Law Judge's finding that plaintiff could perform his past relevant work, provided he was seizure free, and that plaintiff was seizure-free when he took his medication.[1] (R. 421.) The District Court remanded the case to determine the reason plaintiff "forgets" taking his medication.[2] (R. 421, 473-474.)

A supplemental hearing was held on February 1, 2005. (R. 421, 429-464.) In the Law Judge's May 17, 2005 decision, he found that plaintiff was only insured through December 31, 2001. (R. 422, 427.) He further found that plaintiff had an eighth grade education and had not engaged in substantial gainful activity[3] since his alleged date of disability onset, December 11, 2000[4]. (R. 423, 427.) The Law Judge determined that plaintiff's seizure disorder and borderline intellectual functioning constituted severe impairments, yet when viewed independently or in

---

[1]As noted by the Commissioner, the record does not contain a copy of the District Court's order. (Commissioner's Brief, p. 2, n.1.) For purposes of this Report, the undersigned has relied upon the Law Judge's summation of the order. (R. 421, 425.)

[2]According to the Law Judge's decision on remand, the District Court found that the Law Judge's findings that plaintiff was less than fully credible and that the opinion of his treating physician was not entitled to great or controlling weight were supported by substantial evidence. (R. 421.)

[3]The Law Judge noted that although plaintiff was working laying carpet two or three days a week, this did not constitute substantial gainful activity. (R. 423.)

[4]Plaintiff's initial disability onset date was March 1, 1995. (R. 15, 114.) At the June 13, 2002 hearing, plaintiff amended the date to December 11, 2000. (R. 15.)

2

combination, were not severe enough to meet or equal a listed impairment. (R. 426-427.) The Law Judge was of the view that plaintiff's impairments, however, could be expected to cause his alleged symptoms, though not to the extent he alleged, and plaintiff's allegations about the intensity, duration and limiting effects of his symptoms were "not entirely credible." (*Id.*) The Law Judge further found that plaintiff had the residual functional capacity to perform work at all exertional levels, so long as he avoided hazards and climbing and performed only occasional balancing, stooping, kneeling, crouching and crawling. (*Id.*) Finally, the Law Judge concluded that because plaintiff was not precluded from performing his past relevant work as a warehouseman or produce clerk, he was not disabled under the Act. (R. 427-428.)

Plaintiff appealed the May 17, 2005 decision to the Appeals Council. The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 409-411.) This action ensued.

In the brief filed in support of her motion for summary judgment, the Commissioner argues that testimony from the medical expert at the supplemental hearing following remand supports her argument that plaintiff had the mental capacity to remember to take his seizure medications. (Commissioner's Brief, p. 15.) Specifically, the Commissioner points to the following opinion provided by the ME, Robert Muller, Ph.D.:

> So, I would see [the claimant] functioning in the borderline range intellectually, Your Honor, and certainly someone who is in the borderline range intellectually and he's able to keep track of money and balancing a checkbook is able to remember to take their medications I believe.

(R. 456.) In other words, Muller linked plaintiff's ability to take his prescribed medications with his ability to manage his finances. This opinion was based upon Dr. Muller's assessment of an evaluation performed by Nadia Webb, Psy.D. on September 17, 2004 but not upon the results of

3

Dr. Webb's second evaluation of March 25, 2005, which was ordered by the Law Judge at the conclusion of the first hearing.[5] ( R. 458-463, 563-574.)

Dr. Webb's reports following her 2004 and 2005 evaluations reveal that while plaintiff *reported* an ability to handle his financial affairs, Dr. Webb did not believe he actually was able to handle his financial affairs.[6] For example, in her 2004 report, Dr. Webb opined that plaintiff suffered an "impaired cognitive functioning, which makes it unreasonable that he should be responsible for his own funds since he would not be able to do so in a consistently reliable and thoughtful way." (R. 520.) It was clear from her 2004 report that this cognitive impairment was the consequence of his seizure disorder, and less likely that he was "encephalopathy." (R. 519.) Dr. Webb believed that plaintiff's underlying condition was "a neurologically based problem rather than a personality disorder." (R. 520.) There is no question that, in her 2005 report, Dr. Webb found that plaintiff's management of his own funds was a "problem," one that lay in his "limited cognitive abilities." (R. 570.) She was of the view that plaintiff "should have a guardian appointed for him." (*Id.*)

The premise upon which Dr. Muller based his opinion, and it was his opinion which ruled the day, assumes plaintiff's capacity to balance his own checkbook and otherwise manage his own funds. Dr. Webb's evidence clearly demonstrates that plaintiff was a poor historian of his cognitive abilities to do just that, and it stands to reason that if he needed a guardian to help him manage his

---

[5]The reasons for this additional evaluation are set forth on the record of the February 1, 2005 supplemental hearing. (R. 458-463.)

[6]The undersigned is aware that in a "checklist" dated April 10, 2005, Dr. Webb checked the box suggesting she believed plaintiff could handle his own funds. (R. 574.) This appears to be a classic clerical error because it is in direct contradiction to Dr. Webb's written notation made just below the checked box (R. 574), as well as her written report completed just two days prior to the checklist (R. 570).

4

financial affairs, he also needed assistance in managing his prescribed medications. In other words, Dr. Muller's conclusions were only as good as any substantial evidentiary basis for his assumptions, and the Commissioner's own consulting examiner, in fact, dispelled those assumptions.

For these reasons, the undersigned will RECOMMEND that an order enter REVERSING the Commissioner's final decision, GRANTING the plaintiff's motion for summary judgment, entering judgment for the plaintiff and RECOMMITTING the case to the Commissioner solely to calculate and pay proper benefits

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ 
U.S. Magistrate Judge

Jan 30, 2007
Date

5

Case 3:06-cv-00032-NKM-BWC   Document 17   Filed 01/30/07   Page 5 of 5   Pageid#: 66