CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
for C'ville
JUN 20 2007
JOHN F. CORCORAN, CLERK
BY: /s/ Fay Coleman
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN C. GRIMES,<br>                          *Plaintiff,*<br>v.<br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY<br>                          *Defendant* | CIVIL NO. 3:06cv00032<br><br>MEMORANDUM OPINION and ORDER<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross-motions for summary judgment. By standing order of the Court, this case was referred pursuant to 28 U.S.C. §§ 636(b)(1)(B) & (C) to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition. The Magistrate filed his Report and Recommendation ("Report"), recommending that this Court enter an order reversing the decision of the Commissioner of Social Security ("Commissioner") denying benefits, granting the Plaintiff's motion for summary judgment, entering judgment for the Plaintiff, and recommitting the case to the Commissioner solely to calculate and pay proper benefits.

The Commissioner timely filed objections to the Report, obligating the Court to undertake a *de novo* review of those portions of the Report to which objections were made. *See* 28 U.S.C. § 636(b)(1); *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982).

## I. BACKGROUND

On December 12, 2000, the now-46-year-old Grimes filed a claim for a period of disability, disability insurance benefits, and supplemental security income under the Social

Security Act ("Act"), as amended, 42 U.S.C. §§ 401–34, 1381–1383f. Grimes' claim was denied initially and on reconsideration; he thereafter requested a hearing before an administrative law judge ("ALJ").

Grimes testified at the hearing before the ALJ and amended his alleged disability onset date to December 11, 2000. (R. 15) The ALJ listed Grimes' past work experience as including employment as a warehouseman, laborer, carpentry helper, and produce clerk. (R. 16) The ALJ found that Grimes has had a seizure disorder since Grimes was a child and that Grimes once had a seizure and fell off of a roof while working, but that the seizure disorder is "fairly well controlled" with medication. (R. 16)

On June 28, 2002, the ALJ issued a decision in which he denied Grimes' claim. (R. 15–21) The ALJ analyzed Grimes' claim using the five-step sequential analysis as set forth in 20 C.F.R. § 404.1520. This five-step process asks whether:

(1) the claimant is engaged in substantial gainful activity [if so, the claimant is deemed not disabled and the inquiry ends];
(2) the claimant has a medical impairment (or combination of impairments) that are severe [if not, the claimant is deemed not disabled and the inquiry ends];
(3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P ("medical listings") [if so, disability is presumed, the inquiry ends, and benefits are awarded];
(4) the claimant can perform [his] past relevant work [if so, the claimant is deemed not disabled and the inquiry ends]; and
(5) the claimant can perform other specified types of work [if so, the claimant is deemed not disabled; if not, the claimant is deemed disabled].

*Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The ALJ found that Grimes was not engaged in substantial gainful activity, that he had a severe medical impairment (the seizure disorder), and that the medical impairment did not meet or exceed the severity of the impairments listed in the medical listings. (R. 16–17)

At step four, the ALJ determined that Grimes could perform some, but not all, of his past

relevant work. (R. 17–19) The ALJ stated that the medical evidence showed that the seizure disorder somewhat limited Grimes in his ability to work, but that Grimes' own testimony was "inconsistent with an individual who is unable to work." (R. 18) Additionally, the Disability Determination Service medical consultants determined that Grimes was capable of performing work at all exertional levels with limitations in balancing, stooping, kneeling, crouching, and crawling. (R. 18) The consultants also stated that Grimes should avoid climbing and exposure to hazards, such as moving machinery. (R. 18)

Based on this evidence, the ALJ determined that Grimes retained the residual functioning capacity ("RFC") to perform work at all exertional levels (avoiding the limitations) and then concluded that Grimes could perform some of his past relevant work. The ALJ determined that Grimes' seizure disorder (as controlled by the medication) did not prevent Grimes from working as a warehouseman or as a produce clerk. (R. 19) Answering step four of the five-step process in the affirmative, the ALJ found Grimes to not be disabled. (R. 19, 20) The ALJ's decision denying benefits became the final decision of the Commissioner on February 13, 2003, when the Appeals Council declined review. (*See* R. 8–9)

On April 9, 2003, Grimes filed a complaint in the Eastern District of Virginia seeking review of the Commissioner's decision. *See* Complaint, Grimes v. Barnhart, No. 1:03cv00447-wcs, docket entry no. 3 (E.D. Va. Apr. 9, 2003). In an opinion dated October 20, 2003, a court in the Eastern District determined that two of the ALJ's findings were supported by substantial evidence: first, at step four, Grimes could perform past relevant work so long as he was not subject to seizures and second, that Grimes was not subject to seizures so long as he takes his medication. *See* Memorandum Opinion at 5, Grimes v. Barnhart, No. 1:03cv00447-wcs, docket entry no. 11 (E.D. Va. Oct. 20, 2003) ("The record supports the ALJ's finding at step four that

- 3 -

Case 3:06-cv-00032-NKM-BWC   Document 20   Filed 06/20/07   Page 3 of 11   Pageid#: 86

Grimes could perform his past relevant work, provided he was not subject to seizures. The record also supports a conclusion that Grimes remains seizure-free when he takes his prescribed medications.").

But the court remanded to determine the sole issue of whether Grimes had the mental ability to adhere to his medication regime. *See id.* 5–7 (stating that Grimes' failure to take his medication "is a pivotal issue not sufficiently developed in the administrative record" and remanding to determine "whether [Grimes] has the mental acumen to faithfully adhere to his treatment program").

Thus, pursuant to the mandate rule,[1] the ALJ was required on remand to consider only evidence of whether Grimes had "the mental acumen to faithfully adhere to his treatment program," a duty the ALJ acknowledged. (*See* R. 425 ("The issue here is whether the claimant has the ability to remember to take his medications.")) Therefore, following remand, Grimes was given a psychological examination by Nadia Webb ("Webb"), a clinical neuropsychologist, on September 17, 2004. (R. 423, 514–21) Webb diagnosed Grimes with a cognitive disorder not otherwise specified, mild mental retardation, and, of course, the seizure disorder. (*See* R. 519)

On February 1, 2005, the ALJ held a hearing, at which time Grimes testified (*see* R. 421) but apparently Webb did not (*see* R. 421–28). Instead, an independent expert psychologist, Robert L. Muller ("Muller") testified as to the findings in Webb's report. (*See* R. 421–22)

With respect to Grimes' mental acumen, Muller testified that Webb's report noted that Grimes did not know his birthday, did not understand questions, and that his remote memory was poor. (*See* R. 423) Grimes reportedly told Webb that he had no mental health history and that he was good at keeping track of the family money and balancing the checkbook. (*See* R. 423)

---

[1] See discussion *post*.

- 4 -

Case 3:06-cv-00032-NKM-BWC    Document 20    Filed 06/20/07    Page 4 of 11    Pageid#: 87

According to Muller, Webb's report also revealed that she felt Grimes "had difficulties with understanding" and that although Grimes "was able to read and write simple sentences," he was "not able to recall the sentences." (*See* R. 424) According to Webb's report, Grimes was administered the Wechsler Adult Intelligence Scale and that his scores showed a verbal IQ of 66, a performance IQ of 73, and a full-scale IQ of 66. Muller stated that he questioned the validity of the test because Grimes stated he had a headache (which would likely affect his scores); because Grimes had a mild motivation problem; and because, as Webb herself indicated, one of the subtests was invalid and that subtest was, in Muller's opinion, necessary to calculate proper scores, otherwise the scores were merely estimates. (R. 424)

In Muller's opinion based on Grimes' previous examinations, Grimes is in the borderline range of intellectual functioning. (R. 425) A person in the borderline range of intellectual functioning, Muller stated, "should be able to keep track of money and balance a checkbook" and that "such person should also be able to remember [his] medications." (R. 425)

The ALJ, who was "convinced that if [Grimes] takes his medications he's not going to experience severe seizures," (R. 451), held the record open so that Grimes could undergo a neuropsychological exam and complete IQ test. When the ALJ asked Muller whether Grimes would have a mental impairment if the results from the second exam showed that Grimes' IQ was in the 60s, Muller testified, "[n]o sir." (R. 460)

Grimes underwent the second set of tests and, according to Webb's report (R. 563–74), Grimes' IQ scores were all in the 70s (*See* R. 567). The second report also revealed that he had less difficulty providing Webb with his history and Webb had "no significant concerns about [Grimes'] presentation during this evaluation," perhaps because Grimes "seemed far more coherent and appeared much more consistent with the reports in the medical records provided."

- 5 -

Case 3:06-cv-00032-NKM-BWC    Document 20    Filed 06/20/07    Page 5 of 11    Pageid#: 88

(R. 563–64) Webb reported that Grimes told her that he "manages his own medications and they include Dilantin 100 mg six per day and primidone 250 mg four times per day" and that "[b]oth medications are for treating his seizure disorder." (R. 565) Grimes apparently told Webb, too, that he does not take other medication, such as vitamins or herbal supplements, but that he takes Advil for headaches. (R. 565) "He reported that he went to the hospital two years ago .... He reported that he has not smoked cigarettes in 10 years. He reported that the last time he drank alcohol was 14 years ago. He also stated that he used to use marijuana to help with his seizure disorders but has not done so for two years." (R. 565) Importantly, he told Webb that he can manage all of the finances at home and balances his own checkbook and that doing so is not his brother's or wife's duty, but his own responsibility. (R. 566) Webb concluded her report, however, by stating that although Grimes said he could manage his own funds—without assistance—"[h]is cognitive scores indicate that this is a problem." (R. 570)

As the ALJ noted, the only issue on remand was whether Grimes "has the ability to remember to take his medications." (R. 425) "Dr. Muller answered that question in the affirmative, and his answer is supported by the weight of the evidence." (R. 425)

The ALJ repeated his earlier findings by stating that Grimes was not engaged in substantial gainful activity, that he had a severe medical impairment (the "seizure disorder, controlled with medications, and borderline intellectual functioning"). The ALJ then found that the medical impairment did not meet or exceed the severity of the impairments listed in the medical listings and, at step four, that Grimes retained the RFC to perform work at all exertional levels (avoiding certain limitations) and then concluded that Grimes could perform some of his past relevant work. Just as he did earlier, the ALJ determined that Grimes' seizure disorder (as controlled by the medication) did not prevent Grimes from working as a warehouseman or as a

produce clerk. Answering step four of the five-step process in the affirmative, the ALJ found Grimes to not be disabled.

The ALJ's decision denying benefits became the final decision of the Commissioner on April 13, 2006, when the Appeals Council again declined review (*see* R. 409–11), and this action ensued.

In Grimes' motion for summary judgment, he argues that the ALJ did not obtain Muller's opinion regarding Webb's second evaluation of Grimes, that the ALJ did not obtain any testimony regarding Grimes' RFC, that the ALJ failed to obtain testimony from a vocational expert to assess the impact of Grimes' mental impairments on Grimes' ability to perform his past work, and that the ALJ did not properly evaluate the medical evidence as reported by Webb.

In his Report, the Magistrate Judge reasoned as follows: Muller equated Grimes' ability to balance his checkbook with his ability to remember to take his medications (based on Webb's first evaluation of Grimes); Webb's personal opinion, however, was that Grimes' management of his own funds was unreasonable and a problem. (Report 4–5) Therefore, the Magistrate reasoned, Muller's opinion was "only as good as any substantial evidentiary basis for his assumptions, and [Webb] dispelled those assumptions." (Report 5) Accordingly, the Magistrate Judge recommended reversing the Commissioner's final decision, granting the plaintiff's motion for summary judgment, entering judgment for the plaintiff, and recommitting the case to the Commissioner solely to calculate and pay proper benefits.

## II. STANDARD OF REVIEW

A district court's primary function in reviewing an administrative finding of no disability is to determine whether the Commissioner's factual findings are supported by substantial evidence and were made in accordance with applicable law. *See* 42 U.S.C.A. §§ 405(g), 1383(c)(3) (West 2007);

- 7 -

Case 3:06-cv-00032-NKM-BWC Document 20 Filed 06/20/07 Page 7 of 11 Pageid#: 90

*Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Laws*, 368 F.2d at 642. However, a claim that the Commissioner improperly applied legal standards in making factual findings is reviewed de novo. *See Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989).

An ALJ has a "duty of explanation" to "refer specifically to the evidence informing [his] conclusion[s]." *See Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Reviewing courts have a corresponding obligation "to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977); *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

Should a case be remanded by the reviewing court, subsequent inquiries must limit themselves to the specific issue on which the case was remanded. This "mandate rule" "forbids the relitigation of issues either expressly or impliedly decided by a higher court." *Adkins v. Barnhart*, 351 F. Supp. 2d 505, 507 (W.D. Va. 2005). The rule "requires a lower court to implement the letter and spirit of a higher court's order," *id.*, and requires that the lower court "tak[e] into account [the higher court's] opinion and the circumstances it embraces," *United States v. Bell*, 5 F.3d 64, 67 (4th Cir. 1993).[2]

---

[2] As this court stated in *Adkins*, "[o]nly in 'extraordinary circumstances' can a lower court reopen an issue already decided by a higher court." *Adkins*, 351 F. Supp. 2d at 507. "These 'limited circumstances' include: (1) a dramatic change in the controlling legal authority, (2) significant new evidence that was not previously obtainable with due diligence, and (3) a blatant error in the prior decision that will result in serious injustice." *Id.* at 507–08. None of these exceptions apply here. Although the ALJ considered Webb's reports following remand, which could certainly be construed to be "significant new evidence that was not previously obtainable with due diligence," the

- 8 -

## III. DISCUSSION

In short, the ALJ followed the applicable law; under the mandate rule, the only issue before the ALJ was whether Grimes had the mental ability to remember to take his medications, and the ALJ's finding that he did, indeed, have that ability, is supported by substantial evidence.

In 2003, a court in the Eastern District of Virginia determined that two findings by the ALJ in his first decision were supported by substantial evidence: that at step four, Grimes could perform past relevant work so long as he was not subject to seizures and that Grimes was not subject to seizures so long as he takes his medication. The court remanded for the sole issue of whether Grimes could remember to take his medication: if he could, his seizures would be controllable, he could perform his past relevant work, and he would not be disabled; if he could not, the door would be open for a finding that Grimes' seizure disorder was not controllable, that therefore Grimes could not perform his past relevant work, and that therefore he would be disabled.

As noted just above, the ALJ on remand could examine only this issue. The ALJ had already made the finding—later upheld by the Eastern District of Virginia—that Grimes could perform past relevant work so long as he was not subject to seizures and that Grimes was not subject to seizures so long as he takes his medication. The ALJ could not revisit, as Grimes now argues, the issue of testimony regarding Grimes' RFC and the issue of testimony from a vocational expert to assess the impact of Grimes' mental impairments on Grimes' ability to perform his past work. These issues were already raised—and affirmed—before remand.

As for Grimes' argument that the ALJ failed to obtain further testimony from Muller regarding Muller's opinion of Webb's second evaluation of Grimes, the ALJ specifically asked

---

mandate rule does not apply to Webb's reports because the remand was for consideration of Grimes' mental acumen.

- 9 -

Muller about the effects of results showing that Grimes' IQ was in the 60s:

> ALJ: "If we had IQs in the 60s, do you see another mental impairment that would be severe or vocationally debilitating?"
>
> Muller: "No sir."

(R. 460) Webb's second report shows IQs in the 70s. (R. 567). Certainly a result showing an IQ range higher than that which, in Muller's opinion, would not constitute a severe impairment, would similarly not constitute a severe impairment.

The only issue left then, is whether the ALJ's explicit finding that Grimes could remember to take his medication is supported by substantial evidence. I find that it is.

Grimes specifically told Webb that he was the one in his family responsible for taking care of the family money and for balancing the checkbook. Indeed, Grimes himself told Webb that he "manages his own medications" and even specified the name of the medications, the dosages of those medications he takes, and the daily quantity of those medications. (*See* R. 565) He also reported to Webb the purpose for which he takes the medications and that he takes no other vitamins or supplements. Although Grimes had previously exhibited problems with his ability to remember his birthday, to understand questions, and to remember remote memories (*see* R. 423)—leading to Webb's conclusion that Grimes likely had "a problem" managing his own funds—Muller testified that IQ scores in the 60s would lead to a contrary conclusion. And here, Grimes' IQ scores the second time around were in the 70s.

Therefore, the evidence supporting the ALJ's decision comes from both the claimant and from Muller; on the other hand, Webb's evidence tends to dispute the ALJ's conclusion. As stated above, the primary function here is for me to determine whether the Commissioner's

---

Therefore, the Commissioner was expected—indeed required—to consider those reports on remand.

findings are supported by substantial evidence, not to weigh the evidence that is before me. Here, there is such substantial evidence: Grimes' own statements and Muller's review of Webb's record both support a finding that Grimes had the mental acumen to remember to take his medication. As such, the Commissioner's decision must be affirmed.

## IV. CONCLUSION

After a thorough examination of the documented record and the applicable law, the Court concludes that the decision of the Commissioner should be affirmed. The Court will not adopt the Report and Recommendation of the Magistrate Judge and hereby DENIES Grimes' motion for summary judgment, GRANTS the Commissioner's motion for summary judgment, AFFIRMS the Commissioner's decision to deny benefits, DISMISSES this case, and ORDERS the Clerk of the Court to STRIKE this case from the Court's docket.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and Order to all counsel of record.

ENTERED: _____
United States District Judge

6/20/2007
Date